IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BRADLEY C. BURCHFIELD                                                                                   PLAINTIFF

v.                                      Civil No. 1:22-cv-01023

ALIBABA GROUP HOLDING LTD.; JACK YUR
MA, Founder, Alibaba Group Holding Limited;
JP MORGAN CHASE BANK, 10% Investor, Alibaba
Group Holding Limited; AMAZON, 10% Investor,
Alibaba Group Holding Limited; BLACKROCK, 10%
Investor, Alibaba Group Holding Limited; CASEY ZHAO,
Alibaba Cloud; ERICA WANG, Employee/Salesperson
Xichang New Material Limited; SWEETY YIN; DRUG
ENFORCEMENT AGENCY; JOSEPH C. TSAI, Co-Founder,
Alibaba Group Holding Limited; JONATHAN ZHAOXI
LU, CEO and Director, Alibaba Group Holding Limited;
MAGGIE WEI WU, CFO, Alibaba Group Holding Limited;
DAVID ZHAIG, CEO, Alibaba Group Holding Limited;
XICHANG NEW MATERIALS LTD.; TIMOTHY J. SHEA,
Director, Drug Enforcement Agency; and JOHN DOE ("JUAN DOE")       DEFENDANTS

### REPORT AND RECOMMENDATION

Plaintiff, Bradley C. Burchfield, ("Burchfield") currently an inmate of the Randall L. Williams Correctional Facility of the Arkansas Division of Correction, filed this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and various other federal statutes as well as state law claim. Burchfield proceeds *pro se* and *in forma pauperis* ("IFP"). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. This case concerns Burchfield's purchase of rust inhibiter and acrylic nail adhesive containing isopropylbenzylamine

1

from the website www.alibaba.com.

The case is before the Court for preservice screening of the Complaint under 28 U.S.C. § 1915(e)(2). Pursuant to § 1915(e)(2), the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

## I. BACKGROUND

Burchfield filed his initial Complaint on February 28, 2022. On March 23, 2022, Burchfield filed an Amended Complaint (ECF No. 5). While an Amended Complaint usually supersedes the original complaint, it is clear that from Burchfield's references to allegations in the initial Complaint, he meant for the Amended Complaint to be a supplement to the initial Complaint. *See e.g., Owens v. Isaac,* 487 F.3d 561, 564 (8th Cir. 2007)(district court should have read the original and amended complaints together as plaintiff intended). Additionally, on April 6, 2022, Burchfield filed a Supplement (ECF No. 15).

Burchfield owns Burchfield Sales & Consulting, LLC, and Burchfield's Welding and Fabrication, LLC. (ECF No. 15 at 1). In March of 2020, Burchfield "made purchases from Alibaba Group Holding Limited's ("Alibaba's") electronic platform (www.alibaba.com) for substances advertised as 'rust inhibitors' to be used as weld-through etch primer in the course of his business." *Id.* This substance was also marketed as "acrylic nail adhesive" which Burchfield purchased. *Id.*

Burchfield used the rust inhibiter as a "top-applicated primer" and found the product did not inhibit rust. (ECF No. 5 at 2). When he used the acrylic nail adhesive, "the nails fell off." *Id.* Burchfield also used the substance on his welder and it "rusted the main armature and electrical coils . . . [and] will no longer strike an arc." *Id.* Burchfield indicates he sustained

2

excessive business losses as a result of his use of the product. *Id.* Burchfield says he put the substance on the under carriage of his two vehicles resulting in weaking of the "aluminum on the transfer case leading to the failure of the Allison Transmission" in his 2002 Chevrolet Silverado 3500. *Id.* at 6.

Burchfield indicates he spent "upwards of $6,000" on the product. (ECF No. 5 at 2). After research, Burchfield says he discovered the substance was a "by-product when pharmaceutical companies made methamphetamine." *Id.* Burchfield states the product is sold by various entities. *Id.* He also indicates the Drug Enforcement Agency's ("DEA's") website says the substance is "federally legal." *Id.* Burchfield states he was arrested with some of the product in his possession and charged with possession of methamphetamine. *Id.* He indicates all charges except one were dismissed. *Id.*

Burchfield states that he also discovered that silencers, M-16 bolt carriers, firing pins, armored vehicles, and personnel carriers could be purchased on the website. (ECF No. 5 at 4). This led Burchfield to "believe that the Alibaba platform is in all reality a narcotics and illegal arms 'criminal enterprise' which has also committed wire fraud 18 U.S.C. § 134[3] and mail fraud 18 U.S.C. § 134[1] by mislabeling the substances being paid for and the substances being shipped as they are shipped under the names calcium acetate, poly-vinyl alcohol, and acrylic nail resin." *Id.* Burchfield alleges that "[a]t all times, each Defendant was materially involved in multiple acts herein constituting a 'pattern of racketeering' [and] acts of terrorism as foreign narcotic kingpins." *Id.*

In January of 2021, Burchfield filed a complaint filed under 42 U.S.C. § 1983, *Burchfield v. Jones, et al.,* Case No. 6:20-cv-06150. (ECF No. 1 at 1). After he served the complaint, Alibaba announced in February of 2021 that it would no longer sell isopropylbenzylamine on its

electronic platform after April 2021.  *Id.*  Burchfield further alleges Alibaba committed securities fraud and that its stock price fell in half after this announcement.  *Id.*  Burchfield alleges that investors JP Morgan Chase, Amazon, and Blackrock withdrew their investments.  *Id.*

In December of 2021, while at the house of his fiancée, Burchfield alleges he received a death threat from an unknown Mexican referring to Casey Zhao ("Zhao") who "operates an Alibaba website.[1]"  (ECF No. 1 at 1).  Burchfield alleges this threat establishes a pattern on racketeering activity in violation of 18 U.S.C. §§ 1961(1)(A), 1512 and 1513 "by tampering or retaliating against a witness or informant."  *Id.*  Burchfield contends the threat of violence is a violation of 18 U.S.C. §§ 1961 and 1962.  He further maintains the Defendants "have an 'enterprise' established to sell narcotics and defraud the American public."  *Id.*

In the Amended Complaint (ECF No. 5), Burchfield indicates that in addition to RICO he believes the Defendants' conduct violated the Alien Tort Act, 18 U.S.C. § 2333(a), the Anti-Terrorism Act, the Terrorism Risk Insurance Act, 21 U.S.C. § 1901, the Anti-Terrorism Clarification Act of 2018, and the Controlled Substances Act.  Burchfield also asks to have the Defendants listed with the Office of Foreign Asset Control as a foreign narcotics kingpin pursuant to 18 U.S.C. §§ 2531, 2333-34.  Finally, Burchfield asserts state law claims of theft under Ark. Code Ann. § 16-118-107, violations of the Online Marketplace Inform Act, Ark. Code Ann. §§ 4-119-101-05, and unjust enrichment.  *Id.*

In his Supplement (ECF No. 15 at 1), Burchfield alleges the DEA's statement that isopropylbenzylamine is a federally legal substance "interferes with laws passed by the General

---

[1] The Amended Complaint (ECF No. 5 at 2) mentions threats made to his fiancée.  While Burchfield has a right to represent himself, he cannot represent others.  28 U.S.C. § 1654.  For this reason, the claims of his fiancée are not at issue.

Assembly of Arkansas regarding methamphetamine as the two substances have the same chemical formula." Burchfield states that the "pre-emptive theory of 21 U.S.C. § 903" and the Supremacy Clause create a conflict between the current drug laws in Arkansas and the statement on the DEA website which cannot consistently stand together. *Id.* Burchfield maintains the DEA created a public nuisance by allowing the other Defendants to "bypass the Controlled Substances Act" and sell isopropylbenzylamine. *Id.* at 1-2. Burchfield asserts that the "constitutionality of laws passed by the General Assembly of Arkansas and Congress can only be heard by the Supreme Court." *Id.* at 1. Burchfield ask that the case be referred pursuant to 28 U.S.C. § 2403 to the Supreme Court before dismissing the claims against the DEA. *Id.* at 2.

As relief, Burchfield seeks treble damages based on the threat to his life and the life of his fiancée (ECF No. 1 at 2). He seeks compensatory damages in the amount of $22,550 for damage to the welder and truck and in the amount of $18,000 for loss of business capital. (ECF No. 5 at 7). He seeks declaratory relief to have Defendants designated as foreign narcotics kingpins and to have their asserts frozen as well as the assets of third-party sellers on the Alibaba website and associated websites. *Id.* He seeks punitive damages in the amount of 500 billion dollars. *Id.* He also seeks witness protection for he and his fiancée.

## II.     APPLICABLE STANDARD

The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather

than to vindicate a cognizable right. *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988); *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III. DISCUSSION

#### A. RICO Claims

"The major purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers." *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 990 (8th Cir. 1989)(*citing United States v. Turkette,* 452 U.S. 576, 591 (1981)). RICO, codified at 18 U.S.C. §§ 1961 *et seq.*, provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). To state a RICO claim, Burchfield must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

**(1) Existence of an Enterprise**

The term enterprise is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A]n association-in-fact enterprise must have a least three structural features: a purpose, relationships among those associated with the enterprise, and

longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States,* 556 U.S. 938, 946 (2009). "The enterprise is not the pattern of racketeering activity. Rather, the enterprise must have a common or shared purpose, some continuity of personnel, and an ascertainable structure distinct from the pattern or racketeering." *Asa-Brandt, Inc. v. ADM Investor Services, Inc.,* 344 F.3d 738, 752 (8th Cir. 2003)(citing *United States v. Turkette,* 452 U.S. 576, 583 (1981)).

Burchfield's allegations are insufficient to allege the existence of an ascertainable structure distinct from the pattern of racketeering activity. In fact, he refers to the Alibaba platform as being the criminal enterprise, without reference to any association with the other named Defendants. (ECF No. 5 at 4). It appears Burchfield believes that because he has identified some of the named Defendants as employees, officers, founders, or investors in Alibaba Group Holdings that they are automatically part of a RICO enterprise. This is insufficient to allege the necessary structural features as set forth in *Boyle,* 556 U.S. at 946.

**(2). Existence of a Pattern**

For a pattern to exist there must be at least two acts of racketeering activity. 18 U.S.C. § 1961(5). "There are two issues here that should be kept distinct: Whether the plaintiffs have sufficiently pleaded acts of racketeering, and whether those acts can be said to form a pattern." *Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 919 (8th Cir. 2001).

**(a). Acts of Racketeering Activity**

The term racketeering activity is defined to include a variety of criminal offenses under state and federal law including mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, tampering with a witness, victim, or informant, 18 U.S.C. § 1512, and retaliating against a witness, victim, or informant, 18 U.S.C. § 1513—the four federal statutes Burchfield identifies as predicate

acts in this case. 18 U.S.C. § 1961(1). Burchfield also alleges a violation of State law dealing with controlled substances as a predicate act. The violations of law are referred to as predicate offenses or predicate acts and must be present to support the existence of a pattern of racketeering activity. *Asa-Brandt,* 344 F.3d at 752.

The Supreme Court has "explained that, to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.' Proximate cause for RICO purposes, . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.' A link is '"too remote," "purely contingent," or 'indirect is insufficient.'" *Hemi Group, LLC v. City of New York, N.Y.,* 559 U.S. 1, 9 (2010)(quoting *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268, 271, 274 (1992)). In *Hemi Group,* the Supreme Court reaffirmed that it does not go beyond the "first step" in determining "proximate cause inquiries under RICO." *Id.* at 10. When the alleged violation did not lead "'directly to the plaintiff's injuries,'" the plaintiff "failed to meet RICO's 'requirement of a direct causal connection' between the predicate offense and the alleged harm." *Id.* at 10-11 (quoting *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 460-61 (2006)).

**(1) Mail Fraud and Wire Fraud**

When a predicate offense is based on fraud, such as mail fraud and wire fraud, the pleading must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *Nitro Distrib, Inc. v. Altico, Inc.,* 565 F.3d 417, 428 (8th Cir. 2009). "Rule 9(b) requires a party alleging fraud or mistake 'state with particularity the circumstances constituting a fraud or mistake.'" *Id.* (citing Fed. R. Civ. P. 9(b)).

After discovering various other items, such as silencers, bold cutters, firing pins, armored vehicles, and personnel carriers could also be purchased on the site, Burchfield concluded that the

Alibaba platform was in "reality a narcotics and illegal arms 'criminal enterprise' which has also committed wire fraud . . . and mail fraud . . . by mislabeling the substances being paid for and the substances being shipped as they are shipped under the names calcium acetate, poly-vinyl alcohol, and acrylic nail resin." *Id.* at 4.

As to all Defendants other than Alibaba and David Zhaig, Burchfield fails to allege the key components of a fraud claim "the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.,* 637 F.3d 877, 880 (8th Cir. 2011)(cleaned up). Simply put, Burchfield's claims against the remaining Defendants do not meet the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure.

"The elements of mail fraud under 18 U.S.C. § 1341 are (1) a scheme to defraud by means of material false representations or promises, (2) intent to defraud, (3) reasonable foreseeability that the mail would be used, and (4) that the mail was used in furtherance of some essential step in the scheme." *United States v. Cole,* 721 F.3d 1016, 1021 (8th Cir. 2013)(cleaned up). The elements of wire fraud under 18 U.S.C. § 1343 "are identical to the elements of mail fraud except wire fraud involves interstate wire communications rather than mail. *Id.*

Burchfield's allegations against Alibaba and David Zhaig are sufficient to state a plausible claim of mail fraud as the allegedly defective product was shipped to him in the mail in furtherance of the alleged scheme to defraud. However, Burchfield has not alleged the use of interstate wire communications.

**(2). Intimidation of, or Retaliation Against, a Witness**

Next, Burchfield alleges intimidation of, and retaliation against, a witness in violation of 18 U.S.C. §§ 1512-1513. Presumably Burchfield believes he will someday be a witness against

one or more of the Defendants;[2] the alleged threating message was in Spanish and delivered via Facebook in December of 2021 by an unidentified person; the threat referenced a named Defendant, Casey Zhao.

Section 1512 "prohibits only specific types of conduct—intimidation, physical force, threats, or attempts to do so, misleading conduct, or harassment." *United States v. Risken,* 788 F.2d 1361, 1368 (8th Cir. 1986). Burchfield alleges he received a death threat which amounts to tampering with or retaliating against him in violation of § 1512. Burchfield does not indicate what subsection of § 1512 he believes was violated by this threat. Subsection (a)(1) involves killing or attempts to kill another person and is not applicable. Subsection (a)(2)(C) involves the use of physical force or the threat of physical force against a person to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings." Subsections (b)(1) & (2) apply only to official proceedings which are not alleged here. Subsection (b)(3) could possibly apply and provides as follows:

> (b)Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
> * * *
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission of or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings.

---

[2] The civil action Burchfield brought under 42 U.S.C. § 1983 was closed on July 13, 2021, *Burchfield v. Jones, et al,* Civil No. 6:20-cv-06150. This case was not filed until April 13, 2022. Thus, Burchfield cannot be referring to being a witness in that case.

18 U.S.C. § 1512(b)(3).  While § 1512 is not limited to pending official proceedings and covers potential witnesses and even those reporting criminal activity, *Riskin,* 788 F.2d at 1368, Burchfield has made no factual allegations that any of the named Defendants took any of the prohibited actions or even how, or when, he believes he might engage in a protected activity such as being a witness or communicating with law enforcement officers.  Burchfield has not alleged a plausible violation of § 1512.

Section 1513 covers the retaliation against a witness, victim, or informant.  18 U.S.C. § 1513.  Once again Burchfield does not cite to any specific subsection, however, Burchfield has not alleged that he acted as a witness or informant.  Further, he has made no factual allegations suggesting that any of the named Defendants took retaliatory actions against him or threatened to do so.  Burchfield has not alleged a plausible violation of § 1513.

**(3).  Violation of State Controlled Substances Laws**

Section 1961(1)(A) includes in its definition of racketeering activity "any act or threat . . . dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1)(A).  Burchfield appears to be contending that isopropylbenzylamine should be a controlled substance under the Arkansas Controlled Substances Act, Ark. Code Ann. 5-64-101 *et seq.*  However, he fails to allege that isopropylbenzylamine is a controlled substance or listed chemical under that Act.  Burchfield's belief that this substance should be controlled under both Federal and State law is simply insufficient.  Burchfield has not alleged a plausible violation of Ark. Code Ann. §§ 5-64-101 *et seq.*

**(b).  Whether the Acts Form a Pattern**

These acts of mail fraud must be related and must "amount to or pose a threat of continued

11

criminal activity." *United Healthcare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563, 571 (8th Cir. 1996)(citation omitted). "The relationship prong of the pattern element is satisfied if the predicate acts 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Wisdom v. First Midwest Bank, of Poplar Bluff,* 167 F.3d 402, 406 (8th Cir. 1999)(quoting *Handeen v. Lemaire,* 112 F.3d 1339, 1353 (8th Cir. 1997)).  The continuity prong, "can be either closed-ended or open-ended.  Closed-ended continuity involves 'a series of related predicates extending over a substantial period of time;' open ended continuity involves acts which, by their nature, threaten repetition into the future.  Multiple predicates within a single scheme are encompassed within the RICO statute as long as the relationship and continuity elements are met." *Id.* (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989)).  "The 'continuity' requirement generally requires proof that the predicate acts extended over a closed period of at least a year."  *Webster Industries, Inc. v. Northwood Doors, Inc.,* 320 F. Supp. 2nd 821, 850 (N.D. Iowa 2004)(citing *Handeen,* 112 F.3d at 1353).

      Burchfield maintains the products labelled rust inhibitor and acrylic nail adhesive which he purchased, beginning in March of 2020, on Alibaba's website did not work as described.  He indicates the website ceased selling the product or products in April of 2021.  In short, the entire case centers on Burchfield's unspecified number of purchases of the allegedly defective products between March of 2020 and April of 2021.  While he maintains the product consisted of isopropylbenzylamine which he describes as a by-product of the pharmaceutical production of methamphetamine, he has not alleged this by-product is itself a scheduled controlled substance or listed chemical under either Federal or State law.  Burchfield maintains the DEA should never have described isopropylbenzylamine as being legal under federal law and believes the substance

should be illegal; however, he has not alleged isopropylbenzylamine is in fact illegal under Federal or State law or has any of the properties of methamphetamine such as its production of euphoria or its acting as a stimulant. His remaining allegations are based on his extrapolation from the fact that the website carried various other items which he has not alleged were unlawful to sell. This falls far short of alleging the existence of a pattern of racketeering activity. "If the pattern requirement has any force whatsoever, it is to prevent ordinary commercial fraud from being transformed into a federal RICO claim." *Menasco, Inc., v. Wasserman,* 886 F.2d 681, 685 (4th Cir. 1989).

In sum, the RICO fails because Burchfield has not sufficiently alleged the existence of an enterprise; the predicate acts, other than mail fraud, he relies on are insufficiently pled; and he has not sufficiently alleged the existence of a pattern of racketeering activity.

## B. Alien Tort Statute ("ATS")

The ATS, 28 U.S.C. § 1350 provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." The Act was designed to ensure adequate remedies for foreign citizens. *Jesner v. Arab Bank, PLC,* ___ U.S. ___, 138 S. Ct. 1386, 1398 (2018). "The ATS is 'strictly jurisdictional' and does not by its own terms provide or delineate the definition of a cause of action for violation of international law." *Id.* Although referenced by Burchfield, this Act has no application because he is not an alien.

### C. Anti-Terrorism Act ("ATA")[3]

The ATA provides a civil remedy for "[a]ny national of the United States injured in his or her person, property, or business by an act of international terrorism . . . may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. § 2333(a). Section 2333(d) provides that aiding and abetting liability exists:

> In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designation as a foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

*Id.*

The term international terrorism is defined in 18 U.S.C. § 2331(1) and means activities that:

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> (B) appear to be intended—
>
>> (i) to intimidate or coerce a civilian population;
>> (ii) to influence the policy of a government by intimidation or coercion; or
>> (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
> (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the person they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

---

[3] Burchfield also alleges violation of the Anti-Terrorism Clarification Act of 2018, Pub. L. No. 115-253. However, this Act merely amended portions of 18 U.S.C. §§ 2331, 2333, & 2334.

14

*Id.*

"To qualify as international terrorism, the . . . acts must satisfy each of the criteria contained in § 2331(1)." *Gonzalez v. Google LLC,* 2 F.4th 871, 900 (9th Cir. 2021). A mass shooting at a Florida night club was held not to be an act of international terrorism giving rise to civil liability. *Colon v. Twitter, Inc.,* 14 F.4th 1213 (11th Cir. 2021). Similarly, giving money to a group which then sponsored a terroristic act did not constitute an act of international terrorism giving rise to civil liability when the donor had no knowledge of the donee's intended criminal use of funds. *Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,* 291 F.3d 1000 (7th Cir. 2002).

Clearly, the selling of a product that does not act as advertised does not fall within the definition of an act of international terrorism. Burchfield has not alleged that an act of international terrorism has been committed. He has not alleged the Defendants provided material support to any terrorist groups, provided services to a terrorism group, or in any other way was involved with a terrorist group. No plausible claim is stated.

**D. Terrorism Risk Insurance Act ("TRIA")**

Section 1605A of the Foreign Sovereign Immunities Act ("FSIA") provides a terrorism exception to the jurisdictional immunity of a foreign state. 28 U.S.C. § 1605A. Specifically, it provides that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment or agency.

28 U.S.C. § 1605A(a)(1).

Subsection (c) provides that "[a] foreign state that is or was a state sponsor of terrorism . . . and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to—(1) a national of the United States . . . for personal injury or death," 28 U.S.C. § 1605A(c). The TRIA in turn provides allows the execution of judgments obtained under the FSIA against blocked assets of a terrorist party including an agency or instrumentality of that terrorist party. 28 U.S.C. § 1610; *Bank Markazi v. Peterson*, 578 U.S. 212, 217 (2016). Clearly, Burchfield's allegations state no plausible claim under the FSIA or the TRIA.

### E. Foreign Narcotics Kingpin Designation Act ("Kingpin Act")

The Kingpin Act, 21 U.S.C. §§ 1901 *et seq.*, makes it the "policy of the United States to apply economic and other financial sanctions to significant foreign narcotics traffickers and their organizations worldwide to protect the national security, foreign policy, and economy of the United States from the threat" to the "national security, foreign policy and economy of the United States." 21 U.S.C. §§ 1901(b) and (a)(4). "The Kingpin Act authorizes the President to designate 'foreign person[s] that play a significant role in international narcotics trafficking ("SFNTs")." *Fares v. Smith,* 249 F. Supp. 3d 115, 118 (D.D.C. 2017)(citing 21 U.S.C. §§ 1903(b), 1907(7). The Office of Foreign Assets Control ("OFAC") has delegated authority to designate foreign persons "as materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of , a[n] [SFNT]," or "as playing a significant role in international narcotics trafficking." 21 U.S.C. §§ 1904(b)(3), 1904(b)(4). "Person designated pursuant to such authority are referred

16

to as 'specifically designated narcotics traffickers' ("SDNTs")." *Fares,* 249 F. Supp. 3d at 118 (citing 31 C.F.R. §§ 598.803, 598.314). Designation as an SDNT results in the freezing of assets including "all such property and interests in property within the United States, or within the possession or control of any United States person" and precluding any person from dealing in those assets. 21 U.S.C. §§ 1904(b), 1904(c).

Burchfield seeks to have the Defendants so designated. The Kingpin Act provides no civil cause of action.[4] The Court has no authority to make such designation or to require the President or the OFAC to make such designation. No plausible claim is stated.

### F. The Controlled Substances Act ("CSA")

The CSA, 21 U.S.C. § 801 *et seq.,* makes it unlawful for any person to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense" any controlled substance "[e]xcept as authorized by [21 US.C. §§ 801-904]." 21 U.S.C. § 841(a)(1). "The CSA establishes five 'schedules' of controlled substances differentiated by the scheduled drug's potential for abuse, its usefulness in medical treatment, and the potential consequences if abused. 21 U.S.C. § 812(b)." *Monson v. Drug Enforcement Admin.,* 522 F. Supp. 2d 1188, 1192 (D.N.D. 2007).

The term "controlled substance" is defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). The authority to add a substance to a schedule lies with the Attorney General. 21 U.S.C. § 811(a); *see also Gonzales v. Oregon,* 546 U.S. 243, 258 (2006)("The Attorney General has

---

[4] A person so designated may challenge the designation by seeking administrative review before the agency, 31 C.F.R. § 501.807, or on procedural due process grounds, *see e.g., Fares v. Smith,* 901 F.3d 315 (D.D.C. 2018).

rulemaking power to fulfill his duties under the CSA"). Isopropylbenzylamine is not a controlled substance under any of the five schedules. 21 U.S.C. § 812.

Burchfield maintains that isopropylbenzylamine has the same chemical formula, $C_{10}H_{15}N$, as methamphetamine. *See e.g.,* (ECF No. 15 at 1). In view of this, Burchfield contends the DEA should not have published a statement on its website that isopropylbenzylamine is a "federally legal" substance. *Id.* The CSA provides no enforceable federal substantive rights to Burchfield. *See e.g., Safe Streets Alliance v. Hickenlooper,* 859 F.3d 865, 897 (10th Cir. 2017)(no federal substantive rights to privately enforce the CSA).

### G. Anti-Preemption Provision of the CSA and the Supremacy Clause

Section 903 provides as follows:

> No provision of this subchapter shall be construed as indicating an intent on the part of Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the States, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903.

Burchfield contends the statement published on the DEA website interferes with laws passed by the General Assembly of Arkansas regarding methamphetamine because it has the same chemical formula as isopropylbenzylamine. Burchfield maintains this is in violation of § 903 and the Supremacy Clause. He asserts this creates a public nuisance by allowing the other Defendants to bypass the CSA. However, Burchfield has not identified any specific provision of Arkansas law or the CSA that the DEA statement allegedly preempts; nor does Burchfield allege that the substance isopropylbenzylamine has been made unlawful under Arkansas drug laws.

With respect to the Supremacy Clause, the Supreme Court has held that "[t]he Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action." *Armstrong v. Exceptional Child Center, Inc.,* 575 U.S. 320, 325 (2015)(cleaned up). Next, the question is whether § 903 creates "new federal substantive rights or incorporates a private citizen's existing substantive rights, elevating them for federal protection." *Safe Streets,* 859 F.3d at 903. The Supreme Court has stated that

> [t]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class. For a statute to create such private rights, its text muse be phrased in terms of the persons benefited.

*Gonzaga Univ. v. Doe,* 536 U.S. 273, 283-84 (2002).

"Where a federal statute 'simply does not create substantive rights,' the Supreme Court has explained that it is 'unnecessary to address [any] remaining issues' about a private citizen's ability to enforce that statute or obtain relief." *Safe Streets,* 859 F.3d at 903 (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 11 (1981)). A private citizen may not enforce the CSA. *Id.* at 904. Burchfield cannot bring his claim about the DEA statement or the non-listing of isopropylbenzylamine as a scheduled drug under the Supremacy Clause or § 903. No plausible claim is stated.

H. **Supplemental State Law Claims**

Burchfield has alleged state law claims of theft, unjust enrichment, and violation of the Online Marketplace Consumer Inform Act, Ark. Code Ann. 4-119-101 *et seq.* Pursuant to 28 U.S.C. § 1367(c)(3) the Court may decline to exercise supplemental jurisdiction over state law claim when it has dismissed all claims over which it has original jurisdiction. As all federal claims

will be dismissed prior to the issuance of service of process, the Court declines to exercise supplement jurisdiction in accordance with the provisions of § 1367(c)(3).

### IV.     CONCLUSION

For these reasons, it is recommended that:

(1) all Burchfield's federal claims be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b)(1);

(2) the Court decline to exercise jurisdiction over the supplemental state law claims under 28 U.S.C. § 1367(c)(3); and

(3) the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of May 2022.

*/s/ Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE